Santiago v. Honeywell, 21-13752. We've got Mr. Brill here for the appellant, and Mr. I'm going to—Betke? That's correct, sir. Outstanding. Kudos to our courtroom deputy for clarifying that for me. Well done. Mr. Brill, whenever you're ready. Thank you, Your Honor. May it please the Court? Counsel? The district court committed three errors in dismissing this case, each of which alone mandates reversal. Now, this is the second time this same district court committed reversible error in this very case, as Your Honor, Judge Luck, may appreciate, but that Your Honor, Judge Newsom, and His Honor particularly, and as much as both of you, were in that prior case and decided that prior case. So, let me ask you about standing, because we don't have a lot of time together, the way you split up your time. I want to just—I want to ask you about redressability. So, redressability. So, assume for the moment that I agree with you that you've alleged an injury and that that injury is traceable to the—so, the injury here being Ms. Minava having electricity issues with her appliances and things, and that that is attributable to the replacement of the analog to the digital meter. Yes, sir. So, I'm there. How is that going to be redressed by what you've alleged in your complaint? Fundamentally, we're seeking injunctive relief. Yes. Which would require Honeywell to do essentially that which they contracted with FPL to do. Right. You want them to take out the electric meter. I do. Okay. Let me ask you about that. I agree with you that that would probably solve the problem, because it would stop the arcing,  It would, and it needs to initially confirm whether there is, in fact, a mismatch between blade and receptor. Right. So, whose property is the meter? The smart meter itself is FPL's property. How in the world is Honeywell allowed—forget Honeywell. Let's say you sued me. How am I allowed to take someone else's property by injunction? A question that actually was raised in the very first appeal as well, which was why the whole issue of— Why it was a necessary party. But redressability is a different issue than necessary party. Yes, but in that same context, the point was that the court could fashion a host of protective mechanisms or measures that would permit Honeywell with FPL. Can I ask something? How in the equitable power of the court? Because remember, the way that from our Constitution, the court has equity jurisdiction. That's given to the district courts through the Judiciary Act. How in the equity power can a court fashion a remedy that allows you to break the law? I don't think respectfully that it would be breaking the law. Honeywell installed— Taking—for me taking someone else's property isn't breaking the law? It would not be if there is, in fact, a court redress that allows— So, you can't do it—you can't get around the trespass laws and the theft laws just because a court says it's okay to do it. I mean, that seems to be backwards. In other words, a court can order anything, right? That's not really the question. The question is, does the court have the power to order what you're asking it to do? I believe it indisputably—well, of course, it's not the first— Can you show me a statute, a rule, something that was presented to the district court in this record that would allow a court to order the relief that you have sought? There was not a focus of this particular dismissal. This case was—one reason we're here is on the limited issue of dismissal of our counts. But I'll say this— And I agree—well, that's not 100 percent true since standing was decided below. But I understand the problem is, though, for us, we have an independent obligation to assure that we have standing. And so I'm asking this question not to put you on the spot, but simply to assure myself that we have the authority under Article III to decide the case. Well, then I would—to the extent that is an issue of concern to the Court, and I appreciate obviously you're asking it so it is, that we could certainly provide supplemental briefing to that effect. That's an option. If our—if my presiding colleague orders that, then I'd be happy to do it. I'll say this. If it's not Honeywell, then who is it? Is it the customer? Is the customer not allowed— Okay. So, but, counsel, here's—I'm not a drafter of your complaint, but you've done this on purpose. And I suspect I know why. You don't want FPL at the table. And that's not really for me to decide. But you've alleged a complaint. You've only brought in Honeywell for your own reasons. And then you've only sought injunctive relief. That's correct. And you have said the injunctive relief is these three or four things. That's correct. So I can only go with what you've asked for. I agree. Could I envision in some possible way a way for you to bring this lawsuit? I probably could. I was a good lawyer back in the day. Yes, you were. But all I have is what you've given me. My response at bottom back would be, yes, it's their property, but it's in the meter can in which only the property owner has rights. There's no doubt that, in my mind, that if the class is certified, that a court could order something to do with the meter can. In other words, I'm not saying that Honeywell can't go to the can. It's the taking of—and, by the way, the complaint alleges in its face that the meter is FPL property. We know that it is. That's correct. Right. So it's the taking of someone else's property and keeping it for itself without the permission of that person that I'm struggling with a lot. I appreciate that. But in fairness, it's not an FPL meter, per se, right? It's Honeywell's meter that they place in the can. Honeywell manufactured. Honeywell distributed. And, yes, once it's placed there, because FPL paid them for it, it is FPL's property. Paragraph 10. The meter inserted into the meter can is property of FPL. FPL maintains the meter, while the meter can is the homeowner's property, which the homeowner must maintain. Agreed. And I don't — I'm not distancing myself from that allegation. Reading the rest of the complaint and addressing what the facts are, Honeywell installed this meter. I just find it — and, again, without the opportunity for additional briefing, I'm not criticizing the Court for bringing up the issue, but this was not argued by — I understand. So let's maybe go to something with regard to the merits and maybe the injury issue. Okay. So you talk about it in the context of standing. I'm talking about the context, for me, in the context of the merits. Pardon? On the merits. On the merits. Okay. Because I note, relative to standing, one critical thing we didn't brief, and it dictates in favor of the finding of injury in the merits case, too, is when you look at paragraph 39 of the complaint, there's a terrific admission by the party opponent here, Honeywell, that there is substantial risk. The second part of that paragraph. There is fairly substantial risk for an increased repairs and customer being notified that the condition found as a direct result of the installation. Now, that, by its very terms, is sin. I just don't think you need to go to substantial risk. I think you have, in my mind, if you go to paragraph 63 in some of the deposition testimony, you have injury. Absolutely. So I will tell you from my perspective, I have not gone down the rabbit hole of substantial risk. Thank you. It is a rabbit hole, and we've made it that way. But here in my mind, there's that. It's the redressability part that I was having trouble with. I appreciate that. But if you can get me to the merits on whether there's actual injury here. Yes. And fundamentally there, it's real simple. Yes, we take paragraph 63, but I would also tie it in with paragraph 4, because paragraph 4 introduces the concept which the defendant flatly ignores in making this false assertion that there's no connectivity here, right, relative to the installation and the harm. Defendant's improper installation, it says in 4, resulting from the inadequate training, supervision, and inspection is the only reason plaintiffs and every putative class member are imminently at risk of suffering damages. Right? Then we turn to, as you noted, paragraph 63, and we say that Mosina is particularly at risk herself because she's experiencing these charges and, excuse me. It says that she's provided inaccurate inflated usage and charge amounts and that her meter is already malfunctioning. In her deposition testimony, which since this is a factual attack we can consider, she testifies to how since this happened, she's had to replace a number of appliances, a refrigerator, a mirror, multiple, I think there were air conditioning issues. Multiple televisions had to be replaced. So what's most troubling, and I see my time is up, so I'll conclude. You're answering the Court's questions. It's fine. Thank you so much. Is there too profound, unfair, and reversible errors committed by the Court in respect to this injury, discrete injury, having nothing to do with, as you aptly called it, the rabbit hole of the charges, you know, the inspection theory, as we called it? And that is that Mosina did not testify in her deposition in any way, shape, or form that those inflated charges and usage amounts predated the smart meter installation. In fact, the record shows when you look at that deposition, those words don't even appear in the charge. I guess, and this is where I'll end, so I don't have any more questions after this, but as I understand it, we don't even look at the deposition when we get to the negligence, simply whether this alleged an actual injury for gross negligence and negligence, correct? That's it. All we look at is the complaint at that point. That's right. And that's what the first error was, going outside those four corners in the first place, and then doing that, misreading the deposition, and not converting it to a summary judgment, and giving us the opportunity to introduce all those other allegations of injury that you mentioned, the television sets and so forth. And that's the real fundamental and unfair problem here. Okay, very well. You've got your rebuttal time remaining. Mr. Becke, let's hear from you. May it please the Court, Counsel, pleasure to have the opportunity this morning to discuss Honeywell's position. Can you start with the standing issue that I raised, please? Yeah, absolutely, and I think you're 100 percent right with respect to redressability here. This Court cannot fashion a remedy that would essentially have Honeywell break the law by trespassing and taking property that's not theirs. That is exactly the case, and this is why there is not an opportunity here in this case for this Court to authorize the relief that plaintiffs are seeking. We'll ask for supplemental briefing. Unless you're prepared with a case to cite to us, we'll ask for supplemental briefing from both sides. But if you have something of substance about the law you want to share with us, please do. I do not at this time. Okay. Well, then, yeah, we'll arrange. The Court will issue an order for supplemental briefing in short order. I will not ruin your Christmases. Thank you. With respect to standing, let me jump to the negligence count and actual harm. There were some questions about that. The Court got it right with respect to actual harm. There is no actual harm. So we're past standing and we're on the merits now? Correct, unless the Court has further questions about standing. No, I don't. So do you agree with your opposing counsel that the Court was not permitted to look at the deposition when it made the decision on the merits of the actual injury issue? I agree that to the extent she did rely, and I think it's unclear whether the Court relied on the deposition testimony for purposes of finding no actual harm. But to the extent she did, I would agree that would convert and that would require 10 days' notice, and 10 days' notice was not provided. Right. I do believe, though, that it was harmless error under the circumstances. And so I will just tell you, it sure seemed to me because she sort of controverted the allegation based on deposition testimony when it came time to discussing the merits. So I don't know how else to read it other than that she did it. But the question that you want to ask is, we do a de novo review of the complaint anyway, and so are the allegations sufficient or not, right? Exactly. Okay, so forget for a moment the substantial risk, and let's say I agree with you that Florida law does not permit a substantial risk theory for injury, that it requires actual injury there. Why would that paragraph that we were — your opposing counsel and I discussing, paragraph, I think I said 63. Is that 63? I should rely on my memory more. Is that not sufficient? Sure. Three reasons. First, it's because it does not actually plead injury. What it does — Having inaccurate and inflated usage and charge amounts? It states that it created — So I just want to be clear. You're saying that if I am given — if I'm having to pay more for power than I did before, that that is not an injury? Well, to be technical here, Your Honor, it doesn't say that she paid more. It says there were — It says charge — Inflated usage and charge amounts. It says charge amounts. She was charged more. Correct. Okay. All it says. I think a fair inference from that is that she paid the increased charges. Again, she's not alleging this as an issue of damage. Her negligence count is very clear in what she is stating, and she doesn't state anywhere a damage as a result of inflated usage and charge amounts. How about that the meter is malfunctioning? With respect to the meter malfunctioning, she doesn't state damage as a result of the meter malfunctioning. So let's go to the substance of the count. This is paragraph 89. So this is actually in the substance of the count. As a direct and proximate result of Honeywell's gross negligence — this is the gross negligence, but the same allegations in both of them — plaintiffs and the class suffered and may suffer damage to it. Damage in the meter can, cost of repair work by the electrician, damage to property inside the house, cost to bring the premises to current code, and cost of obtaining permits and inspections. Is that not within the realm of what we're talking about here? She doesn't allege that any of that has occurred. It's just an imminent risk. It says she suffered it or may have suffered it. She's allowed to argue in the alternative — or allege in the alternative. She's saying that she suffered those very things, and that's linked to getting higher charges and my meter is malfunctioning. Is it not? Understood, Your Honor. I'm merely asking. Certainly. I'm reading the complaint for the first time. You guys have had this for a long time. Sure. And again, how we read the complaint, Your Honor, and I think the proper reading of the complaint is it does not allege actual harm. It alleges imminent risk. It has a conclusory allegation, as you noted, in the gross negligence, not the negligence counts, of having actually suffered harm. But there is nowhere in the complaint that identifies what that harm is. But in addition, Your Honor, the arguments with — or the allegations with respect to causation simply aren't here. She doesn't make any connection. Okay. So let me ask you about that. So give me one second while I turn to my notes. So the allegations as I understand them are as follows, and this is from Docket Entry 55, the amended complaint. This is at page 9. Quote, the improper installation has caused system-wide arcing, power surges, burning of meter, enclosure components, and other damage to affected homeowner property. This is at page 10. Quote, consumers were harmed by these improper installations by virtue of being placed at imminently high risk of damage to their properties, electrical infrastructure, electrical appliances, and property structure. At page 19, quote — this is with regard to Ms. Mazzina, the complaint alleges there is evidence her smart meter is already malfunctioning. And then page 24, which is the one I read to you, as a direct and proximate result of the negligence, plaintiff and class are at risk of suffering damage — suffered and at risk of suffering damage to the meter and cost of repair, damage to the property inside. How is that not causation? Enough for causation. I was addressing the issue with respect to inflated usage charges. Is that not related to all of those things? I don't — is — Again — Is improper installation causing arcing, power surges? Isn't that exactly what you'd expect of somebody — of someone who has inflated bills, that there is a malfunctioning with regard to their power? I don't read it that way. With respect to inflated usage charges, there's nothing in the complaint that ties an installation with having inflated usage charges. She just asked the court to make the inference that there is something about an installation that would lead to inflated or usage charges, but there's nothing that would explain what it is about the installation that leads to those additional charges. I'd also submit that an entirely separate reason exists here to dismiss the negligence claim, and that is the absence of a duty to protect against economic harm. And this is — So this is the economic loss rule? It is not the economic loss rule. I'm confused because I don't understand this argument outside the context of the economic loss rule. Understood. And certainly there has been some confusion in the Florida case law with respect to a distinction — I'm confused, and I think I know a Florida case law okay. Understood. Okay. So the difference between economic loss rule and a duty element is that in a negligence count, there needs to be a showing where the harm is economic harm, that the defendant had a duty to protect against economic loss. That's a different analysis than an economic loss rule, which looks — which is confined, as Tiara tells us. So you're saying — it would not be within the zone of foreseeability, which is how I understand Florida defines duty, for someone with contractual obligation to install something correctly on somebody's property, to not install it correctly on somebody's property? Sure. With respect to the zone of foreseeability, the economic danger is not the type of risk that the law places within the zone of risk. So it's a different — Why is that? Just explain it. Unpack that for me. I don't think I understand that. Yeah. An important case in this regard is the Virgilio case from the Eleventh Circuit in 2012 that discussed — So I've got to tell you, counsel, and this is a problem I'm having, anything before Tiara condominium, which I think that is, is going — you're going to have to convince me that that didn't cause a sea change in Florida law with how Florida lawyers understood the economic loss rule. Understood. And there are a number of decisions since Tiara that recognize the distinction between no duty to protect against economic loss and the economic loss rule. These cases are out of district courts, federal district courts in Florida. I can just state a number of these, even from a few months ago. The short squeeze trading case, 2022 Westlaw — But this goes to Judge Newsom's question, and I apologize if I interrupted the answer to that, which is, why would this not be within the zone? So why, if you have a contractual obligation to install something, would there not be economic harm that could result from the installation being improper? And the reason is because courts are very suspect where a negligence count is asserted and only economic loss. Okay, so, but see, I thought that was the economic loss rule. It is. I think we're saying, like, forget about economic loss rule. We'll grant you that it's sort of by the by. Now let's just talk about on the sort of the, you know, the elements of this particular case. Why wouldn't economic loss be something that was within the zone of foreseeability? Yeah, and a number of reasons, and some of these are historical. And the Moreno v. Sarasota County Board case walks through the history of negligence counts and even looks to the fact that negligence historically comes from the intentional tort of trespass, which focused on physical injury or property damage and not economic loss, and walks through the instances in which courts have allowed for a negligence claim with only economic loss. Professional malpractice is an example, negligent misrepresentation, certain circumstances where courts have allowed. But outside of that, the test is extraordinary circumstances must exist for a court to allow a negligence claim where there's only economic loss. An example of this is the Curd case from the Florida Supreme Court that did specifically identify an economic interest. These are the fishermen in Tampa Bay who had an economic interest in the marine life. The marine life was killed off by pollution. The court said in that instance, this is an extraordinary circumstance. The zone of foreseeability would seem to be so far more removed from that than it would be in a case like this where it's directly linked to the contractual obligation to do the very thing. They're saying there's an economic injury from the very thing that Honeywell was contracted to do. I'm having trouble seeing how that falls outside the circle. Sure. And to the extent the contract would exist here, again, in the Moreno case, the court did recognize instances in which courts have, or reasons by which courts have said no negligence claim where all we have alleged is economic loss. And so here, the duty that Honeywell owed was not to protect against economic loss. In the Curd case, the court found under the circumstances where the fishermen's livelihood depended on fishing, they had a commercial license to fish, that was an economic interest in an extraordinary circumstance that justified permitting a negligence count under those circumstances. Those are not the circumstances in this case. And frankly, Curd is the only case I'm aware of in which a court has allowed, a Florida court has allowed a negligence count to go forward for pure economic losses outside of professional malpractice and outside of negligent misrepresentation. And again, as I mentioned, there are a number of decisions. I won't go through the sites of them, but I'll mention them. Can I just ask you a quick question that will at least help to sort of clarify this in my own mind? I don't mean to put words in your mouth, and I'm not asking you to waive anything you don't want to waive. But so for purposes of this argument, you're not relying on the economic loss rule. That is correct. There's some other principle. The economic loss rule does not apply in this case. This is not a product liability case. Tiara was clear. Economic loss rule applies only in a product liability case. So your argument is exclusively with respect to the economic injury, we'll say here so as not to confuse concepts, is that it was outside the scope of the foreseeability, the foreseeable zone of risks for purposes of duty. Correct. And again, the Virgilio case stated where the plaintiff seeks only the recovery of economic loss, the duty element of negligent law serves as an important barrier to extension of liability. In that case, the court then also cited, to the American Aviation Court where, again, that court said, this is a separate analysis than the economic loss rule. It is the duty prong in negligence where there is economic loss. Which itself is driven by some notion of foreseeability, right? Foreseeability, but there are policy reasons in which negligence is not to be expanded to economic loss where folks in ordinary circumstances, outside of extraordinary, do not have a duty to protect against economic loss. The example in the Moreno, Sarasota case, car accident, certainly an expectation to protect someone from the physical injury of the accident, the property damage of their car. But if the result of the accident is they missed work, that's not a cognizable claim in negligence law. There's no duty to protect against that economic loss that resulted from the accident. It requires injury, physical injury or property damage. And again, in these circumstances, all plaintiffs have alleged is economic harm. Okay, very well. Thank you so much for your argument. Mr. Brill, you've got your rebuttal time remaining. I'd just like to briefly note that we do look forward very much to briefing the redressability issue. But in advance of that, just want to clarify one thing. Just sort of pre-state. Go ahead. We're not talking about taking the meter. If you look at our relief requested, paragraph 90 from little Roman numeral 1 on down. It's to remove it. Correct. Just to remove it, inspect it, and photograph. Are you allowed to go to my house and remove my remote control but not replace it? If you let me. Right, if I let you. That's exactly the point. My point is, and again, I know the briefing will help, but it's no different than, as is permitted right now, an electrician to go to the house to check for damage in the meter can is allowed to take off that smart meter and do that because they can't actually make that change. So we're not asking for anything that can't be done already. I just wanted to clarify that. All right. I look forward to you telling me that principle of law, and it may exist, that a third person is allowed to go without FBL's permission and manipulate and remove and take possession of, for some period of time, the meter. That, to me, is the critical issue. I understand. Thank you. I understand. Now, next, I'd like to rebut this fallacious assertion that, and I won't go into it in any deep dive unless Your Honors want me to, that somehow that there is not a requisite link between what Mazina alleges she suffered and the improper installations by Honeywell. You would have to, at bottom, completely disregard all 57 paragraphs of allegations preceding the first count of negligence, all of which are adopted as if fully asserted in that count, and then do the same thing for the gross negligence count and divorce yourself from all common sense to say Mazina's not making that link. That's the whole purpose of her allegations. You would then also have to, as I discussed in my initial argument, divorce yourself from reason as it relates to the tie-in between paragraph 4 and paragraph 63, and you can't do that and make it make sense, and to deduce that somehow she's just making this argument in a complete vacuum that she's suffering these charges. And then next to Your Honor, Judge Newsom's point, she's not paying them. So her electric has been on for all these years, but she's not paying her bills. There's just at root just a basic loss of common sense on all of that. And unless Your Honors have any different questions. I think you should address the duty argument. The duty argument relative to this economic loss, it is as abortive of a reason of that particular rule of law as I can imagine. Let's first point out the procedural infirmity here. One, the Court did not even rule on that argument below because it was not raised as grounds for dismissal in any of the briefings, but rather was asserted for the first time during the hearing on the motion to dismiss, and that's it. So I don't see how this Court should pass on an issue that wasn't even properly made below. Assume there's no preservation issue. Then have that they're asking the Court here to base its decision on an issue not only not considered, but where they haven't actually made the requisite showing at all in their brief here or in our argument today how that somehow this case falls within that very rare sort of dance on the head of the needle of a pen type scenario where doing something, as I think Judge Newsom, you aptly put it, you contract to do, and then fail to do it. If you do that and it causes only economic harm, that somehow that's not a foreseeable zone of risk for which they should be held accountable? And then finally, let's put that in real context. If you put this through the circumstances that we have here, by its logic, and this is, I think, ultimately how we point to the absurdity of it, Honeywell is standing here saying to this Court that they contracted with FPL to install 4.3 million or so of these smart meters, and if they go bad, and if, just to go to the real extreme, cause every house to burn down, but no one to get physically injured, well, too bad, so sad. That's not a foreseeable zone of risk that would engender duty on the part of Honeywell, and you can't hold them accountable. That's inane. This particular discrete economic loss-type theory is limited in circumstances far removed from what we have here. It is just nonsensical. And that's the reason why they didn't meet their burden below, because they could not, and they can't here. It would ultimately mean that every single contract that caused for only economic usability and could only leave economic loss at all would all be outside the foreseeable zone of risk of recovery. We don't have that law anywhere on the books in Florida, which is why you and I both conflated it apparently and confused it with the true economic loss rule, because it's that limited. I would just conclude with this. At the end of the day, other than your very important concern regarding redressability, Your Honor, what we have here are false attacks on what Ms. Mozena did or didn't suffer, did or didn't allege, going outside the pleadings to misrepresent deposition testimony, not having a proper conversion to summary judgment, all of that, but no real attacks other than on this, again, secondarily fallacious, no concrete injury traceable to Honeywell. And that's your only attack you've got by Honeywell. They don't, and I think this is critical, can't challenge the enduring facts in this that are negligent or grossly negligent and have left millions of Floridian homeowners at stake. And I think that's critical to conclude with, because this is more than just our complaint at stake. It's that. We want to get to that, that huge risk to so many millions in our state. And we don't have any argument from Honeywell that goes to the core of that. Okay. Very well. Thank you both so much. That case is submitted. Court will be in recess until tomorrow morning at 9 a.m. All rise.